PER CURIAM.
Appellant appeals an order of summary judgment entered by the trial judge in favor of appellees without any findings of fact to facilitate this court’s review. We reverse.
Lark Flyers owned a Cessna 210 airplane which was insured by appellant. On October 5, 1979, appellees, as lessor, entered into a 12-month “aircraft lease” with Shields Airways, a corporation based at Craig Field. The “aircraft lease” agreement referred to the parties as lessor and lessee and provided, among other things, that lessee had a renewal option; that maintenance, repair, etc., and costs thereof were the lessor responsibility with the right of the lessee, at *1208 lessor’s expense, to make any repairs that required immediate attention; that payments from lessee to lessor were to be made “by the 10th day of the month following use month for tach time as used by Shields Aviation at the rate of $36.00 per hour”; that the lease could not be assigned except with the lessor’s consent; that any sale of the aircraft by the lessor would be subject to lessee’s rights under the contract; and that the lessor was responsible for and was to keep insurance against theft, loss, or destruction of aircraft in force at all times naming lessee as an insured party. Upon expiration of the agreement, the aircraft was to be returned to Lark Flyers.
An information sheet revealed that prior to the effective date of the “aircraft lease” agreement, appellees charged per tach time $39.50 for 10 hours or more to $45 for less than five hours. A “flash” on that sheet provided that as of October 6, 1979, the plane would “be managed by Shields Aviation” and that 27 named pilots were to be billed by appellees directly whereas the remainder would pay Shields at the termination of flight.
Shields Airways rented the plane to one Ramos, who had only 165.9 logged pilot hours. Ramos flew the plane to Peter O’Knight Airport, an unsecured airport, and returned four days thereafter to discover it missing. The plane was subsequently located in Progresso, Corozal District, Belize, where it had crashed.
Appellees sought recovery from appellant under insurance policy coverage F, which provides in pertinent part that:
All Risks While Not in Motion. To pay for direct loss of or damage to the aircraft, hereinafter called loss, occurring while the aircraft engine is not operating and while the aircraft is not in motion under its own power or momentum generated therefrom, out of which a collision occurs with any object.
Appellant defended on the grounds, among others, that insured violated exclusion 4(c), exclusion 8(f) and the pilot’s clause. Exclusion 4(c) provides that the insurance policy would not apply “... to any insured ... who operates or permits the aircraft to be operated for ... any purpose other than as specified in the Declarations.” Item 6 of an amendatory endorsement to the declaration permitted the aircraft to be used for “rental to pilots.” The pilot’s clause, however, limited rental to pilots who would “operate the aircraft in flight” to those with at least 500 logged pilot hours.
Exclusion 8(f) provides that the policy does not apply under coverages (f) and (g) if “the airplane is subject to bailment, lease, conditional sale, mortgage or other encumbrance not specifically stated in the Declarations.” It is appellant’s contention that the “lease agreement” between appellees and Shields Airways was a bailment, lease, or other encumbrance not specifically stated in the Declarations, whereas appellees maintain that the agreement was a brokerage or management agreement.
In order to determine whether the insured property was encumbered within the meaning of the policy, the court should look to the circumstances surrounding the execution of the instrument sought to be considered an encumbrance, the situation and acts of the parties involved in the execution of that instrument and the nature of their relationship. The title given to the instrument by the parties is not necessarily conclusive. Its proper characterization depends on the parties’ intention. Because it is uncertain at this stage whether the agreement between Shields Airways and Lark Flyers constituted a brokerage or management agreement, a bailment, or a lease, we conclude that entry of summary judgment was premature.
Even if we assume that the “lease agreement” constituted a brokerage agreement, it would still be necessary for the trial judge to determine whether the interposition of the corporate entity, Shields Airways, was of such a nature as to change or increase the risk assumed by appellant when it issued its policy of insurance to appellees.
*1209 Accordingly, the order of summary judgment is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.
BOOTH, LARRY G. SMITH and SHIVERS, JJ., concur.